David A. Garcia CA Bar No. 218356
david.garcia@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA  92626
Telephone:  714-800-7900
Facsimile:   714-754-1298

Erica J. Chee CA Bar No. 255720
erica.chee@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV  89169
Telephone:  702-369-6800
Facsimile:   702-369-6888

Attorneys for Plaintiff Red Pill VR, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RED PILL VR, INC., a Delaware corporation, | Case No. |
| *Plaintiff*, | |
| v. | **COMPLAINT** |
| REDPILL   CANADA   VR,   INC.,   a Canadian   corporation;   MARC-ANTOINE  PINARD,  an  individual, DOMINIQUE  ROUSSY,  an  individual, JEREMY        COOPERSTOCK,        an individual, AND PARMINDER SINGH, an individual, | |
| *Defendants*. | |

Plaintiff Red Pill VR, Inc. ("Plaintiff" or the "Company"), by and through its attorneys Ogletree, Deakins, Nash, Smoak & Stewart, P.C., as local counsel, and Oved & Oved LLP (*pro hac vice* applications forthcoming), complaining of the Defendants

Redpill Canada VR, Inc. ("RP Canada"), Marc-Antoine Pinard ("Marc"), Dominique Roussy ("Dominique"), Jeremy Cooperstock ("Jeremy"), and Parminder Singh ("Parminder") (collectively, the "Individual Defendants" and with RP Canada, "Defendants"), alleges as follows upon information and belief:

## JURISDICTION AND VENUE

1.     This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.  The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and Plaintiff is a citizen of the State of California and Defendants are citizens of Canada.

2.     Venue is proper in this District and before this Court, pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted herein occurred in this district.  Venue is also proper pursuant to the agreement between Plaintiff and RP Canada (defined *infra* as the "DSA") in which Plaintiff and Defendant agreed to submit to the jurisdiction of the Federal courts located in the State of California.

## THE PARTIES

3.     Plaintiff is a Delaware corporation with its headquarters located in Los Angeles, California.

4.     Defendant RP Canada, upon information and belief, is a Canadian corporation with its headquarters located in Montreal, Quebec, Canada.

5.     Defendant Marc, upon information and belief, is an individual residing in Montreal, Quebec, Canada.

6.     Defendant Dominique, upon information and belief, is an individual residing in Montreal, Quebec, Canada.

7.     Defendant Jeremy, upon information and belief, is an individual residing in Westmount, Quebec, Canada.

8.     Defendant Parminder, upon information and belief, is an individual residing in Surrey, British Columbia, Canada.

COMPLAINT

# FACTUAL ALLEGATIONS

## A.   Plaintiff's Business

9.   Plaintiff is a technology company that is developing virtual reality technology and software, including a new, proprietary virtual reality platform (the "VR Platform").

10.   Plaintiff's VR Platform will allow Plaintiff's customers to create and distribute virtualized social musical concert experiences by replicating the performer as a photorealistic digital avatar performing live in a three-dimensional fully-immersive virtual venue.  These virtual immersive digital worlds created for Plaintiff's VR Platform will grant millions of users around the world access to live music events without having to leave their homes, while also functioning as a new type of social networking experience.

11.   Plaintiff's primary customer is Sensorium, who contracted with Plaintiff to purchase four virtual worlds and access the VR Platform to host concerts and other events in each world (the "Sensorium Contract").

12.   Because Plaintiff's VR Platform and the content Plaintiff is presently developing for Sensorium are not only unique, but will be the first of their kind once the products reach market, it is imperative that Plaintiff complete the VR Platform and Sensorium's content as quickly as possible to avoid losing its leading market position to competitors.

13.   In September 2019, Plaintiff founded defendant RP Canada and is its largest shareholder, owning 45% of all shares.  The Individual Defendants own the remaining shares of RP Canada, and serve as directors on its board along with Plaintiff's chief executive officer, Laurent Scallie.

14.   Since inception, RP Canada's entire business purpose has been to develop the VR content that Sensorium contracted to buy under the Sensorium Contract, and certain portions of the VR Platform.  Plaintiff is and has always been RP Canada's only

client, and RP Canada's Unanimous Shareholder Agreement, dated September 27, 2019 (the "Shareholder Agreement"), expressly bars RP Canada from competing with Plaintiff.  Shareholder Agr. § 5.1(n), (o).

15.    In order to develop the Sensorium content and portions of the VR Platform, and in accordance with the business purpose of RP Canada, on August 8, 2019, Plaintiff and RP Canada entered into a contract entitled "Development Services Agreement" (the "DSA").

16.    Pursuant to the DSA, RP Canada agreed to provide development and engineering services to assist Plaintiff with the development of the VR Platform and virtual reality content for Sensorium.  The parties understood that payments by Plaintiff under the DSA would be made with funds received by Plaintiff from Sensorium.

17.    On December 23, 2019, Plaintiff and Sensorium memorialized in writing their agreement that Plaintiff would develop certain content for Sensorium for release on the VR Platform in exchange for payments totaling $10 million.  Pursuant to the Sensorium Contract, Plaintiff is required to develop Sensorium's content in specific stages, and Sensorium is required to make certain installment payments both in advance of and after acceptance of each stage.

**B.**    **The Relevant Provisions of the DSA**

18.    The DSA expressly provides that Plaintiff is the sole and exclusive owner of all rights, title, and interests, including intellectual property rights, to any materials developed by RP Canada under the DSA, including any source code:[1]

> The Corporation [*i.e.*, RP Canada] agrees further that **all right, title and interest, including, without limitation, any and all related Intellectual Property Rights, in and to any** methods, processes, procedures, systems, inventions (whether patentable or not), devices, discoveries, concepts, know-how, data, databases, **technology, products, software (in executable**

---

[1] Source code is a text listing of commands to be compiled or assembled into an executable computer program, like the content developed for Sensorium and the VR Platform.

**and source code**), templates, documentation, specifications, compilations, designs, reports, trade-marks, and any enhancements, modifications, or additions to the foregoing or to any products owned, marketed or used by RedPill [*i.e.*, Plaintiff], which have been conceived, reduced to practice or otherwise created or developed in connection with the performance of any of the Services hereunder (the "Developments") **shall be owned exclusively by RedPill**. To the extent that the Corporation has any right, title or interest in the Developments, the Corporation shall and hereby does transfer, convey and irrevocably assign in perpetuity all such right, title and interest worldwide to RedPill. **The Corporation shall promptly make full written disclosure to RedPill of any and all Developments**.[2]  DSA § 6(c).

19.    The DSA defines "Intellectual Property Rights" as:

[A]ll intellectual property and other industrial and proprietary rights of whatever nature including, without limitation, any and all rights in inventions (whether or not patentable), patents (and applications for the same), copyrights, the benefit of any waiver of moral rights, design rights, registered designs (and applications for the same), trade and service marks (registered and unregistered and applications for the same), know-how, trade secret rights and duties or obligations of confidence, mask work rights, topography rights and other rights in semiconductor chips, rights in or relating to databases, trade names, domain names and business names and all other similar or analogous rights, whether registered or unregistered, anywhere in the world. *Id.* § 6(a)(ii).

20.    The DSA further provides that Plaintiff retains superior rights, title, and interest in and to any materials or information, including source code, that Plaintiff provides to RP Canada, which includes any information that Plaintiff has obtained from Sensorium:

The Corporation agrees that all right, title and interest, including, without limitation, all Intellectual Property Rights, in and to any materials, data, or information, including all computer programs (in source code or object code) and documentation related thereto, which have been provided by RedPill to the Corporation in connection with the performance of the Development Services ("Materials") are owned and shall continue to be owned by RedPill and/or its licensors. *Id.* § 6(b).

---

[2] Unless indicated otherwise, emphasis throughout this complaint is added.

21.     Under the DSA, RP Canada expressly agreed to protect any confidential information that Plaintiff provided to it.  *Id.* § 7([first] a).[3]  In that same section of the DSA, RP Canada further agreed:

> [N]ot to use or disclose any Confidential Information during the term of this Agreement other than to perform the services hereunder, nor to utilize the Confidential Information thereafter for so long afterwards as the pertinent information or data remain Confidential Information, regardless of whether the Confidential Information is in written or tangible form.  *Id.*

22.     RP Canada also promised that "such information will be safeguarded and not disclosed to any person, except persons within [RP Canada] on a need to-know basis only, provided such persons have entered into confidentiality covenants."  *Id.* § 7 ([first] c).

23.     RP Canada further agreed in the DSA to cause its employees and agents involved in developing Plaintiff's products to execute non-disclosure and confidentiality agreements concerning any work performed for Plaintiff.  *Id.* § 7([second] b).

24.     The DSA provides that all of RP Canada's confidentiality obligations will remain in full force and effect even after the termination or expiration of the DSA.  *Id.* § 7 ([second] a).

25.     Section 9 of the DSA, entitled "Tax Credits," requires RP Canada to apply for certain tax credits from the Canadian government and obligated RP Canada to apply the receipts from such credits towards the payment of work performed under the DSA:

> The Corporation hereby undertakes to apply for all available refundable tax credits in respect of the Development Services and **to use such refundable tax credits (net of the costs and expenses of obtaining same) to fund the work carried out**.  The Corporation further agrees that any corresponding savings will be passed onto RedPill by adjusting the Fees owing pursuant to this Agreement.

---

[3] Section 7 of the DSA contains two sets of subparagraphs 7(a)-(c).  For clarity, references to these provisions will specify which instance of each such subsection is being cited.

COMPLAINT

26.     In accordance with this provision, RP Canada has applied for over $763,000 (CAD) in Canadian tax credits, which it will receive shortly.

**C.     Plaintiff's Efforts to Protect Its Proprietary Information**

27.     Plaintiff has invested tremendous time, effort, energy, expense and resources to develop the VR Platform and content for Sensorium.   Indeed, to date, Plaintiff has paid RP Canada $3,299,340 pursuant to the DSA to develop limited portions of Sensorium content and portions of the VR Platform.

28.     The content that RP Canada has developed for Plaintiff is not known to the general public and, thus, is incredibly valuable.

29.     Plaintiff's trade secrets are the unique configurations and compilations of information and computer, software, and program code that comprise the content, whether fully or partially created, that RP Canada and its agents have developed for Plaintiff or received from Plaintiff in connection with the development of the VR Platform and any unique content created on Plaintiff's behalf pursuant to the DSA, including but not limited to:

  a.     all source code, object code, project files, blueprints, configuration files, resource files, localization files, build scripts, batch files, shell scripts, the "Turbulent Launcher," file translators, workspace depots, Perforce project reports, programmers' notes, and changelists;

  b.     all unique raw content and art assets, including 3D characters, rigs and objects, graphics and audio files and assays, including meshes, textures, materials, shades, animation, audio (sfx, voice and music), and accompanying databases (SQL and NoSQL);

  c.     all prototypes and concepts, including gameplay prototypes, visual effects prototypes, level design studies, mockups, art direction, style guides, website designs, design specifications, and other design documents, including all binary and ASCII Maya and Photoshop files;

d.     all content developed by RP Canada for Sensorium on behalf of Plaintiff, including but not limited to "Pre-Production," "Vertical Slice," and "Alpha Production" content developed for Sensorium "Dose 1" and "Dose 2"; and

e.     all planning, scheduling, staffing, and meeting notes, development and marketing presentations, Powerpoints, screenshots, or videos related thereto (collectively, "Plaintiff's Proprietary Information").

30.     A competitor of Plaintiff could not recreate Plaintiff's Proprietary Information without expending tremendous amounts of money, resources and time. If the content developed by RP Canada for Plaintiff ended up in the hands of a competitor, any such competitor could usurp Plaintiff's competitive advantage without incurring the time and financial costs Plaintiff incurred to develop it, which would jeopardize Plaintiff's entire business.

31.     In order to protect the value of this commercially-sensitive information, and consistent with the confidentiality provisions of the DSA, Plaintiff took significant steps to safeguard the confidential nature of Plaintiff's Proprietary Information.

32.     Specifically, Plaintiff required RP Canada to maintain Plaintiff's Proprietary Information on its engineers' password protected company-provided computer, until such content was finalized, at which point it would be stored on an encrypted and password protected online repository known as Perforce, which is not accessible to the public at large or Plaintiff's competitors.

33.     Moreover, Plaintiff required RP Canada to limit its engineers' access to this database to only those aspects that were relevant to that engineer's specific tasks. As noted above, Plaintiff required RP Canada, as well as any of its employees and agents working on Plaintiff's products, to enter into confidentiality agreements to safeguard such information.

34.     Separately, Defendants agreed in the Shareholder Agreement that no shareholder other than Plaintiff (*i.e.* the Individual Defendants), would directly or

COMPLAINT

indirectly communicate or disclose any confidential information (such as Plaintiff's Proprietary Information) to any person for any reason other than in connection with the development of Plaintiff's content.  Shareholder Agreement § 13.3.

**D.  Defendants Withhold and Misappropriate for Themselves Plaintiff's Proprietary Information After Sensorium Demands that Plaintiff Produce the Source Code**

35.    Plaintiff and RP Canada worked extensively on the VR Platform and the content for Sensorium.  In accordance with the DSA, RP Canada has completed and provided to Plaintiff certain initial stages of content development for Sensorium under the DSA.

36.    After Plaintiff reviewed and inspected this content for quality control, it submitted the content to Sensorium for acceptance and payment.  Sensorium has accepted several tranches of content and made several installment payments to Plaintiff.

37.    On or about August 10, 2020, however, Sensorium demanded that Plaintiff provide the underlying source code for the content generated for Sensorium, including but not limited to scene files, "Unreal Engine 4" project files, graphics and audio assay, meshes, textures, materials, shares, animation, and audio files.

38.    While the Sensorium Contract does not obligate Plaintiff to do so, Sensorium declared that Plaintiff's failure to provide this information would constitute a breach of the Sensorium Contract.

39.    In order to avoid disrupting its business relationship with Sensorium, on or about August 21, 2020, Plaintiff demanded that RP Canada provide Plaintiff with the requested source code.  That same day, Pinard, acting in concert with the other Individual Defendants, who together constitute a majority of the RP Canada shareholders and directors, advised Plaintiff that RP Canada refused to comply.

40.    This refusal was shocking, given that the content was tailor made to Sensorium's specific needs, and could only be explained as some misguided attempt to

hold the source code hostage in order to usurp the Sensorium Contract, cut Plaintiff out, and extract concessions from Plaintiff through duress.

41.    Accordingly, Plaintiff sent RP Canada a letter on August 21, 2020 stating that RP Canada was in breach of the DSA, and demanding that RP Canada turn over the requested source code.

42.    In response, Defendants made further efforts to interfere with Plaintiff's content on August 25, 2020, when RP Canada terminated Plaintiff's access to Perforce (the above-described online repository into which RP Canada and its engineers periodically uploaded new and revised versions of Plaintiff's content) leaving Plaintiff unable to even retrieve prior versions of Plaintiff's content, let alone the most recent versions.

43.    Despite numerous attempts by Plaintiff to resolve this dispute, Defendants continued to refuse to provide Plaintiff with the source code.

44.    Instead, as part of their common plan and scheme, Defendants decided to hold the source code hostage and use it as leverage in an attempt to extract significant, unwarranted, and highly damaging concessions from Plaintiff with an apparent aim of cutting Plaintiff out of the Sensorium Contract.

45.    Specifically, Defendants sought, among other things:

   a.  To fully "sever" the relationship between Plaintiff and RP Canada;

   b.  Full releases from their numerous confidentiality and non-competition restrictions;

   c.  Full rights to use the Canadian tax credits as they pleased;

   d.  Plaintiff's relinquishment of its right to appoint a director to RP Canada's board; and

   e.  Most tellingly, *that the parties "figure out" who among Plaintiff, RP Canada, and Sensorium owns the "content IP created by" RP Canada,*

COMPLAINT

despite the clear and express contractual provisions in the DSA stating that such content belonged to Plaintiff.

46.     Defendants' strong-armed tactics to retrade their deal made it immediately obvious that Defendants fully intend to implement a completely improper and illegitimate "hostile" takeover of Plaintiff's interest in RP Canada, while at the same time misappropriating Plaintiff's Proprietary Information, including the source code, to unfairly compete against Plaintiff for Sensorium's business.

47.     In furtherance of their common plan and scheme, Defendants also instructed an entity known as Turbulent, RP Canada's subcontractor responsible for developing a portion of the VR Platform, to not comply with Plaintiff's request to turn over the source code in its possession to Plaintiff.

48.     Moreover, RP Canada repeatedly threatened to terminate all of its engineers (who work exclusively on Plaintiff's content) if Plaintiff did not accede to Defendants' demands.

49.     Separately, RP Canada's board meeting minutes for September 11, 2020 purport to reflect that RP Canada intends to liquidate its computers, servers, and software, which threatens Plaintiff's ability to recovery any of its own trade secrets in RP Canada's possession.

50.     RP Canada is apparently fulfilling this threat, as RP Canada engineer, Eric Dejardin confirmed on September 16, 2020 that he performed a "factory reset" on his RP Canada-issued computer, which would destroy various unknown portions of Plaintiff's content on which he was working, and that he "cleaned up the machine" and that RP Canada could "pick up" his computer.

**E.     Sensorium Threatens to Terminate the Sensorium Contract**

51.     Aware that RP Canada was refusing to turn over Plaintiff's Proprietary Information, by letter, dated September 1, 2020, Sensorium wrote to Plaintiff purporting to terminate the Sensorium Contract unless Plaintiff provided Sensorium with certain

specified content that RP Canada has been developing on Plaintiff's behalf, including the source code, within 90 days (*i.e.* November 30, 2020).

52.     However, because RP Canada has refused to return Plaintiff's Proprietary Information, Plaintiff has no way to comply.

53.     Accordingly, by letter to RP Canada, dated September 15, 2020 (the "Termination Notice"), Plaintiff (i) terminated the DSA, pursuant to its terms; (ii) demanded that RP Canada turn over by September 17, 2020 all of Plaintiff's Proprietary Information, including the source code; and (iii) demanded that Defendants implement a litigation hold, including preserving and maintaining all potentially relevant evidence – like Plaintiff's Proprietary Information.

54.     Defendants failed to respond and failed to turn over Plaintiff's trade secrets.

**F.     RP Canada Seeks to Oust Plaintiff from RP Canada's Board and Dispossess Plaintiff's Shares**

55.     The day after RP Canada received the Termination Notice, on September 16, 2020, RP Canada purported to commence an arbitration in Montreal, Canada seeking (i) a declaration that Plaintiff must sell its 45% plurality stake in RP Canada to the Individual Defendants based on a meritless claim that Plaintiff breached the DSA, which in turn breached the Shareholder Agreement, and (ii) to remove Plaintiff from RP Canada's board of directors.

56.     While Plaintiff will litigate RP Canada's claims in due course, it is apparent that the next step in RP Canada's campaign to improperly usurp Plaintiff's business is to rid itself of any oversight and control that Plaintiff can independently assert to attempt to prevent Defendants from continuing to misappropriate Plaintiff's Proprietary Information in a blatant attempt to unlawfully and unfairly compete against Plaintiff for Sensorium's business.

COMPLAINT

**G.      Plaintiff Files This Action**

57.     Based on the foregoing facts, Plaintiff filed this action and this application seeking temporary and preliminary injunctive relief designed to put an end to Defendants' concerted and egregious misappropriation of Plaintiff's Proprietary Information and efforts to unfairly compete with Plaintiff for Sensorium's business.  In this action, Plaintiff asserts claims against Defendants for (1) violation of the Federal Defend Trade Secrets Act (the "DTSA") and the California Uniform Trade Secrets Act ("CUTSA"), (2) breach of contract, (3) tortious interference with contract, (4) conversion, and (5) unfair competition in violation of Cal. Bus. & Prof. Code § 17200.

**FIRST CLAIM FOR RELIEF**
**(Violation of the Defend Trade Secrets Act – Against All Defendants)**

58.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

59.     Plaintiff is the lawful owner of the trade secrets set forth above, including but not limited to Plaintiff's Proprietary Information.

60.     Defendants misappropriated these trade secrets as set forth more fully above.

61.     Defendants' misconduct has caused or threatened damage to Plaintiff as set forth more fully above.

62.     18 U.S.C. § 1836(b)(3)(A) expressly authorizes the Court to award injunctive relief to protect these trade secrets and prevent any further misappropriation of them.

63.     By reason of the foregoing, Plaintiff is entitled to monetary damages in an amount to be determined at trial, but no less than $10,000,000, as well as a preliminary and permanent injunction (a) requiring Defendants to immediately return Plaintiff's Proprietary Information; and (b) restraining Defendants from (i) disclosing, transferring, or in any way revealing Plaintiff's Proprietary Information and (ii) entering into any

relationship with Plaintiff's customer, Sensorium, concerning the subject of Plaintiff's business.

**SECOND CLAIM FOR RELIEF**
**(Violation of the California Uniform Trade Secrets Act – Against All Defendants)**

64.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

65.    Plaintiff is the lawful owner of the trade secrets set forth above, including but not limited to Plaintiff's Proprietary Information.

66.    Defendants misappropriated these trade secrets as set forth more fully above.

67.    Defendants' misconduct has caused or threatened damage to Plaintiff as set forth more fully above.

68.    Cal Civ. Code § 3426.2(a) expressly authorizes the Court to award injunctive relief to protect these trade secrets and prevent any further misappropriation of them.

69.    By reason of the foregoing, Plaintiff is entitled to monetary damages in an amount to be determined at trial, but no less than $10,000,000, as well as a preliminary and permanent injunction (a) requiring Defendants to immediately return Plaintiff's Proprietary Information; and (b) restraining Defendants from (i) disclosing, transferring, or in any way revealing Plaintiff's Proprietary Information and (ii) entering into any relationship with Plaintiff's customer, Sensorium, concerning the subject of Plaintiff's business.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract – Against RP Canada)**

70.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

COMPLAINT

71.    The DSA is a valid and binding contract between Plaintiff and Defendant RP Canada.

72.    Plaintiff has fully performed its obligations under the DSA.

73.    RP Canada breached and repudiated the DSA as set forth more fully above.

74.    As a direct and proximate result of RP Canada's breaches, Plaintiff has suffered and will continue to suffer damages.

75.    By reason of the foregoing, Plaintiff is entitled to monetary damages in an amount to be determined at trial, but no less than $10,000,000, as well as a preliminary and permanent injunction enjoining Defendants, (a) requiring Defendants to immediately return Plaintiff's Proprietary Information; and (b) restraining Defendants from (i) disclosing, transferring, or in any way revealing Plaintiff's Proprietary Information and (ii) entering into any relationship with Plaintiff's customer, Sensorium, concerning the subject of Plaintiff's business.

### FOURTH CLAIM FOR RELIEF
**(Tortious Interference with Contract – Against All Defendants)**

76.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

77.    The Sensorium Contract is a valid contract between Plaintiff and third-party Sensorium.

78.    Defendants have, and at all relevant times have had, knowledge of the Sensorium Contract.

79.    As set forth more fully above, Defendants deliberately and intentionally disrupted the contractual relationship between Plaintiff and Sensorium through wrongful means, including by withholding Plaintiff's source code, and thereby induced Sensorium to purport to terminate the Sensorium Contract.

80.     As set forth above, the contractual relationship between Plaintiff and Sensorium was actually disrupted, and Sensorium purported to declare Plaintiff in breach of the Sensorium Contract.

81.     The foregoing has resulted in significant monetary damages as well as intangible harm that cannot be cured by money damages.

82.     By reason of the foregoing, Plaintiff is entitled to monetary damages in an amount to be determined at trial, but no less than $10,000,000 as well as a preliminary and permanent injunction (a) requiring Defendants to immediately return Plaintiff's Proprietary Information; and (b) restraining Defendants from (i) disclosing, transferring, or in any way revealing Plaintiff's Proprietary Information and (ii) entering into any relationship with Plaintiff's customer, Sensorium, concerning the subject of Plaintiff's business.

## FIFTH CLAIM FOR RELIEF
### (Conversion – Against All Defendants)

83.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

84.     Plaintiff owned, possessed, or had a right to possess Plaintiff's Proprietary Information, as set forth more fully above.

85.     Defendants substantially interfered with such property by refusing to return it to Plaintiff after Plaintiff demanded its return.

86.     Defendants have retained such property without Plaintiff's consent.

87.     Defendants' unlawful retention of such property has caused harm to Plaintiff, and was a substantial factor in causing such harm, as set forth more fully above.

88.     By reason of the foregoing, Plaintiff is entitled to monetary damages in an amount to be determined at trial, but no less than $10,000,000 as well as a preliminary and permanent injunction (a) requiring Defendants to immediately return Plaintiff's Proprietary Information; and (b) restraining Defendants from (i) disclosing, transferring,

or in any way revealing Plaintiff's Proprietary Information and (ii) entering into any relationship with Plaintiff's customer, Sensorium, concerning the subject of Plaintiff's business.

## SIXTH CLAIM FOR RELIEF
### (Violation of the California Unfair Competition Law – Against All Defendants)

89.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

90.     Defendants have engaged, are engaging, and are proposing to engage in unlawful, unfair, or fraudulent business acts or practices, as set forth more fully above, including (1) misappropriating Plaintiff's Proprietary Information in an attempt to unfairly compete with Plaintiff for Sensorium's business; (2) breaching the DSA; (3) tortiously interfering with the Sensorium Contract; and (4) converting Plaintiff's Proprietary Information.

91.     Defendants' misconduct, as set forth more fully above, has caused, is causing, and will cause Plaintiff substantial harm, as set forth more fully above.

92.     Cal. Civ. Code § 17203 expressly authorizes the Court to enjoin Defendants' unfair competition.

93.     By reason of the foregoing, Plaintiff is entitled to monetary damages in an amount to be determined at trial, but no less than $10,000,000, as well as a preliminary and permanent injunction enjoining (a) requiring Defendants to immediately return Plaintiff's Proprietary Information; and (b) restraining Defendants from (i) disclosing, transferring, or in any way revealing Plaintiff's Proprietary Information and (ii) entering into any relationship with Plaintiff's customer, Sensorium, concerning the subject of Plaintiff's business.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that an injunction be entered in its favor and against Defendants, granting Plaintiff the following relief:

COMPLAINT

1.　　An award of damages, including, but not limited to, compensatory, consequential, punitive and exemplary damages, and lost profits, in an amount to be determined at trial of no less than $10,000,000;

2.　　An order preliminarily and permanently (a) requiring Defendants to (i) immediately account for and return Plaintiff's Proprietary Information and materials containing or reflecting such information and all copies thereof, and (ii) submit their computers and electronic devices to a computer forensic expert of Plaintiff's choosing to ensure that Plaintiff's Proprietary Information does not exist on those computers or devices; and (b) restraining Defendants from (i) using, disclosing, transferring, or in any way revealing Plaintiff's Proprietary Information, (ii) entering into any relationship with Plaintiff's customer, Sensorium, concerning the subject of Plaintiff's business, (iii) selling any product or service based in whole or in part on any of Plaintiff's Proprietary Information, (iv) destroying, altering, transmitting, or moving any documents, in whatever form, that may contain or reflect any of Plaintiff's Proprietary Information, except and only to the extent otherwise required by Court order, and (v) all such other acts as the Court deems appropriate;

3.　　An award of Plaintiffs' costs, disbursements, and attorneys' fees incurred in prosecuting this action to the fullest extent permitted by law;

4.　　An award of pre- and post-judgment interest; and

/ / /

1    5.    An award of such other and further legal and equitable relief as the Court
2         may deem just and proper.

3

4    Dated:        September 22, 2020

5

6                                    OGLETREE, DEAKINS,
                                     NASH, SMOAK, & STEWART P.C

7
                                     /s/ David Garcia
8                                    David A. Garcia
                                     Erica J. Chee
9
                                     OVED & OVED LLP
10                                   Terrence A. Oved, Esq. (*pro hac vice* application
                                     forthcoming)
11                                   Andrew J. Urgenson, Esq. (*pro hac vice*
12                                   application *forthcoming*)
                                     Glen Lenihan, Esq. (*pro hac vice* application
13                                   forthcoming)
                                     *Counsel for Plaintiff*
14                                   401 Greenwich Street
15                                   New York, New York 10013
                                     Tel: 212.226.2376
16

17                                   Attorneys for Plaintiff Red Pill VR, Inc.

18

19

20

21

22

23

24

25

26

27

28
                                                                          *Page 19 of 19*
                                     COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT